IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| LUPE V., § | |
| PLAINTIFF, § | |
| § | |
| V. § | CASE NO. 3:23-CV-30-BK |
| § | |
| COMMISSIONER OF THE § | |
| SOCIAL SECURITY ADMINISTRATION, § | |
| DEFENDANT. § | |

**MEMORANDUM OPINION AND ORDER**

Pursuant to 28 U.S.C. § 636 and the parties' consent to proceed before the undersigned United States magistrate judge, Doc. 16, before the Court for determination is Plaintiff's appeal of the denial of her application for social security benefits. For the reasons detailed herein, the Commissioner's decision is **REVERSED**, and this case is **REMANDED** for further proceedings consistent with this opinion.

## I. BACKGROUND

*A. Procedural History*

Plaintiff seeks judicial review of the Commissioner's decision denying her application for disability insurance benefits and supplemental security income under the Social Security Act ("the Act"). Doc. 1, *passim*; Doc. 9-1 at 17. Plaintiff filed her application in August 2020, alleging disability beginning in May 2019, based on lung issues, inflammation around her heart, chronic headaches, and left arm numbness. Doc. 9-1 at 17, 294. Her claim was denied at all administrative levels, and she now appeals to this Court pursuant to 42 U.S.C. § 405(g).

*B. Factual Background*

Plaintiff was 58 on her alleged onset date, has an 11th grade education, and previously worked as a cashier/greeter at a retail store. Doc. 9-1 at 290, 295. Her relevant medical history begins in 2020 with records from Parkland Health and Hospital System. *See* Doc. 9-1 at 382-417, 844-48. In June 2020, Plaintiff weighed 254 pounds and had a body mass index ("BMI") of 45.1. Doc. 9-1 at 833. In August 2020, Plaintiff weighed 262 pounds, had a BMI of 46.5, and was diagnosed with arthralgia in both lower legs after exhibiting swelling and joint pain. Doc. 9-1 at 432-33, 844. She was advised to elevate her feet while seated, avoid prolonged sitting, and to get up and move around every one to two hours. Doc. 9-1 at 434.

In October 2020, Dr. Anne V. Philip, M.D., treated Plaintiff, who then weighed 267 pounds and had a BMI of 47.4, for right hip pain radiating down her right leg, loss of feeling in her left hand after neck surgery, daytime hypersomnolence, suicidal thoughts, and anxiety. Doc. 9-1 at 619, 856. Dr. Philip ultimately prescribed medications, referred Plaintiff to mental health professionals, and instructed Plaintiff to avoid sitting or standing for more than five minutes based on degenerative arthritis in her hips and osteoarthritis in her joints. Doc. 9-1 at 622.

In December 2020, Plaintiff saw Dr. Juana Leonor, M.D. for a gynecological visit. Doc. 9-1 at 865. Dr. Leonor documented Plaintiff's weight as 267 pounds and her BMI as 47.33 and categorized her as morbidly obese. Doc. 9-1 at 865.

A week later, Dr. Philip diagnosed degenerative arthritis in Plaintiff's wrist, forearm, and back, and again advised her to avoid sitting or standing for more than five minutes at a time. Doc. 9-1 at 610. During that visit, Plaintiff weighed 268 pounds and had a BMI of 47.6. Doc. 9-1 at 866. X-rays taken of Plaintiff's thoracic spine that day confirmed degenerative disc disease as well as arthritis. Doc. 9-1 at 634-635.

Plaintiff saw other medical professionals between that visit and her appointment with Dr. Philip in March 2021. *See* Doc. 9-1 at 581-98, 702-07. At the March 2021 visit, Dr. Philip found Plaintiff to be morbidly obese, as she weighed 280 pounds and had a BMI of 49.7. Doc. 9-1 at 870. Dr. Philip also noted that Plaintiff appeared very depressed and out of touch with reality. Doc. 9-1 at 699. Dr. Philip added that Plaintiff's mental health impairments were poorly controlled, resulting in a psychiatry referral and several prescriptions. Doc. 9-1 at 700-01. Dr. Philip ultimately noted, "Most of [Plaintiff's] symptoms are related to [her] weight." Doc. 9-1 at 871.

In April 2021, Dr. Philip recorded Plaintiff's weight as 289 pounds and her BMI as 51.4, noting that Plaintiff had gained nine pounds in three weeks. Doc. 9-1 at 873. Less than a week later, Plaintiff presented to Dr. Gregory Ratti, M.D. for a pulmonary evaluation. Doc. 9-1 at 893. At that time, Plaintiff weighed 286 pounds, and Dr. Ratti opined that Plaintiff's dyspnea was "likely related to" her obesity. Doc. 9-1 at 894.

Plaintiff saw Dr. Philip again in July 2021, when she weighed 280 pounds and had a BMI of 51.4. Doc. 9-1 at 925-26. During that appointment, Plaintiff's reported conditions were largely the same as she previously reported, and included back and joint pain, depression, and nervousness/anxiety. Doc. 9-1 at 926. Dr. Philip noted that x-rays revealed Plaintiff had mild osteoarthritis in her back, knees, and hands. Doc. 9-1 at 927. Additionally, Dr. Philip noted that Plaintiff was severely depressed and inattentive, and had delayed speech, slowed behavior, impaired cognition, and inappropriate judgment. Doc. 9-1 at 926-27. Dr. Philip again prescribed several medications. Doc. 9-1 at 927-28.

Plaintiff saw Dr. Philip at Parkland about two months later, and reported right knee pain, neck pain, and shortness of breath. Doc. 9-1 at 929. X-rays of Plaintiff's right knee revealed

3

grade 3 out of 4 tricompartmental osteoarthritis, which was severe in the medial compartment due to severe joint space loss.  Doc. 9-1 at 788, 932, 1033.  Noting Plaintiff's "morbidly obese" condition and tearful nature, Dr. Philip continued Plaintiff's medications.  Doc. 9-1 at 930-31.

In September 2021, Plaintiff was examined by consulting psychologist Dr. Rosemary Brucken, Psy.D.  Doc. 9-1 at 771-75.  Dr. Brucken documented Plaintiff's slow and unsteady gait, difficulty recalling and providing background information, and her report that she spent most of each day crying.  Doc. 9-1 at 771.  Dr. Brucken characterized Plaintiff's psychomotor skills as slow and uncoordinated and her disposition as nervous, anxious, and depressed.  Doc. 9-1 at 773.  Dr. Brucken also observed that Plaintiff's speech was limited, her expressive communication was deficient, her thought processes were slow, and she had difficulty recalling information and organizing her thoughts.  Doc. 9-1 at 773.  Dr. Brucken concluded that Plaintiff could understand and follow simple instructions, but she would likely have trouble completing tasks within an acceptable time frame, and that her anxiety and depression would likely interfere with job performance and interaction with others in an occupational setting.  Doc. 9-1 at 775.

As of January 2022, Plaintiff weighed 285 pounds and had a BMI of 52.3.  Doc. 9-1 at 971.  Dr. Philip now categorized her as "super morbidly obese" and advised her to avoid sitting for prolonged periods.  Doc. 9-1 at 972-73.

*C. The ALJ's Findings*

In July 2022, the ALJ issued a decision finding that Plaintiff was not disabled.  Doc. 9-1 at 27.  The ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged onset date and had the severe impairments of (1) right knee osteoarthritis; (2) depression; (3) anxiety; (4) somatic symptom disorder; (5) cervical spine degenerative disc disease status post-fusion; and (6) obesity, but that none singularly or in any combination met or medically

4

equaled a listed impairment.  Doc. 9-1 at 20.  The ALJ held that Plaintiff retained the residual functional capacity ("RFC") to perform light work subject to certain limitations:

> [T]he claimant can lift/carry and/or push/pull up to 20 pounds occasionally and 10 pounds frequently; she can stand/walk for 6 hours in an 8-hour workday; she can sit for 6 hours in an 8-hour workday; the claimant can occasionally climb ramps and stairs, but never climb ladders, ropes, or scaffolds; she can occasionally balance, stoop, kneel, crouch and crawl; she can understand, remember and carry out detailed, but not complex instructions.

Doc. 9-1 at 23 (emphasis omitted).  On that basis, the ALJ concluded Plaintiff could perform her past relevant work as a sales clerk and, thus, was not disabled.  Doc. 9-1 at 26-27.

## II. APPLICABLE LAW

An individual is disabled under the Act if, *inter alia*, she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment" which has lasted or can be expected to last for at least 12 months.  42 U.S.C. § 423(d)(1)(A).  To determine whether a claimant is disabled, the Commissioner considers (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant's impairments are "severe"; (3) whether the claimant's impairment "meets or equals" one of the listings in the relevant regulations; (4) whether the claimant can still do her past relevant work; and (5) whether the impairment prevents the claimant from doing any other available work. *Webster v. Kijakazi*, 19 F.4th 715, 718 (5th Cir. 2021) (citing 20 C.F.R. § 404.1520(a)(4)).  The claimant bears the burden on the first four steps.  *Id.* (citation omitted).  The burden then shifts to the Commissioner to "prove the claimant's employability." *Id.* (citation omitted).

The Court's review "is exceedingly deferential and limited to two inquiries: whether substantial evidence supports the ALJ's decision, and whether the ALJ applied the proper legal standards when evaluating the evidence." *Taylor v. Astrue*, 706 F.3d 600, 602 (5th Cir. 2012).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005) (quotation marks and citation omitted).  The Court can neither "reweigh the evidence or substitute its judgment for the Commissioner's." *Id.*  A finding that substantial evidence does not exist "is appropriate only if no credible evidentiary choices or medical findings support the decision." *Whitehead v. Colvin*, 820 F.3d 776, 779 (5th Cir. 2016) (citation omitted).

## III. ANALYSIS[1]

*A. The ALJ erred in failing to consider the effects of Plaintiff's obesity combined with her other conditions in assessing her RFC.*

Plaintiff contends that the ALJ erred in determining that she retains the RFC to "meet[] the physical demands of light work, especially the ability to stand/walk for 6 hours in an 8-hour workday," because that determination failed to account for the effect that her obesity has on her other impairments, including the severe osteoarthritis in her right knee. Doc. 17 at 29-33. Defendant responds that the ALJ properly accounted for the effect of Plaintiff's obesity by acknowledging its existence as well as the fact that the evidence disclosed no more than conservative care for her musculoskeletal impairments. Doc. 21 at 13-14.  Defendant further argues that the ALJ adequately accommodated Plaintiff's impairments by limiting her to only light work with occasional postural movements and no climbing. Doc. 21 at 14.

Upon review, the Court determines that Plaintiff's arguments have merit.

The RFC is an ALJ's assessment, based on all relevant evidence, of a claimant's ability to work, despite her impairments. 20 C.F.R. §§ 404.1545(a), 416.945(a).  Stated differently, it is

---

[1] Because the Court finds reversible error on the issue addressed herein, Plaintiff's remaining arguments are not reached.  Plaintiff may, however, raise those arguments on remand.

the most a claimant can do, notwithstanding her physical and mental limitations. *Id.* The RFC determination is a combined "medical assessment of an applicant's impairments with descriptions by physicians, the applicant, or others of any limitations on the applicant's ability to work." *Hollis v. Bowen*, 837 F. 2d 1378, 1386-87 (5th Cir. 1988) (per curiam). It "is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." *Myers v. Apfel*, 238 F.3d 617, 620 (5th Cir. 2001) (per curiam) (quoting SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996)). The ALJ is solely responsible for assessing a claimant's RFC. 20 C.F.R. §§ 404.1546(c), 416.946(c); *Chambliss v. Massanari*, 269 F.3d 520, 522 (5th Cir. 2001) (per curiam) (holding that the RFC determination falls solely to the ALJ, who is responsible for resolving any conflicts in the evidence). In determining the RFC, the ALJ considers not only medical opinions but all of the relevant medical and other evidence. 20 C.F.R. §§ 404.1513(a), 416.945(a)(3).

Under the Social Security review standards, an ALJ must assess the effect obesity has on a claimant's ability as reflected in the RFC. SSR 19-2p, 2019 WL 2374244, at *4 (May 20, 2019). SSR 19-2p recognizes that "[o]besity increases the risk of developing . . . [o]steoarthritis" and mental impairments such as depression. *Id.* at *3. As such, an individual with obesity may encounter postural and nonexertional limitations as well as exertional limitations, such as "sitting, standing, walking, lifting, carrying, pushing, and pulling." *Id.* at *4. And the effects of obesity combined with other impairments "may be greater than the effects of each of the impairments considered separately." *Id.* "For example, someone who has obesity and arthritis affecting a weight-bearing joint may have more pain and functional limitations than the person would have due to the arthritis alone." *Id.*

Here, the ALJ specifically determined that Plaintiff is "clinically obese," and that Plaintiff's obesity constitutes a severe impairment. *See* Doc. 9-1 at 20. The ALJ also determined that Plaintiff's right knee osteoarthritis and depression—the effects which could be more severe due to obesity—constituted severe impairments. Doc. 9-1 at 20; SSR 19-2p, 2019 WL 2374244, at *4. Nevertheless, the ALJ's decision does not reflect that he considered the effects of Plaintiff's obesity on her other impairments in the assessment Plaintiff's RFC. Indeed, the ALJ merely states that "the claimant's knee impairment and obesity warrant postural limitations." Doc. 9-1 at 20, 25. This is insufficient. *See Brenda Lee H. v. Kijakazi*, No. 1:21-CV-00111-BU, 2022 WL 2992882, at *5 (N.D. Tex. July 28, 2022) (Parker, J.) (ruling that the ALJ did not adequately explain how the claimant's obesity affected her ability to work by mentioning that "the claimant is obese" and "[t]he combined effects of these conditions support exertional, postural, mental and environmental limitations as provided in the residual functional capacity assessment").

Moreover, the ALJ did not adequately develop the record at the hearing with respect to the impact of Plaintiff's obesity on her other impairments and her ability to work. *See Brock v. Chater*, 84 F.3d 726, 728 (5th Cir. 1996) (per curiam) (the ALJ owes a duty to the claimant to develop the record fully and fairly so as to ensure that the ALJ's decision is based on sufficient facts). In the case *sub judice*, the ALJ did not question Plaintiff about her obesity or its effects. *See* Doc. 9-1 at 38-56 (examination of Plaintiff at the hearing). Nor did the ALJ ask the vocational expert about whether Plaintiff's obesity would impact her ability to perform the suggested work. *See* Doc. 9-1 at 56-59 (examination of the vocational expert at the hearing). Because the record lacks an adequate basis for the determination of the effects, if any, of

8

Plaintiff's obesity on her other impairments and, in turn, on her RFC, the standards set forth in SSR 19-2p were not met.  *See Brenda Lee H.*, 2022 WL 2992882, at *5 (citation omitted).

    *B. The ALJ's error was not harmless.*

The Commissioner's decision should be vacated only if the plaintiff's rights are substantially affected.  *Jones v. Astrue*, 691 F.3d 730, 733-34 (5th Cir. 2012).

Plaintiff argues remand is appropriate because it is "not inconceivable that a different administrative decision may have been reached" if the ALJ appropriately considered the effect of Plaintiff's obesity in combination with her other impairments on her ability to work.  Doc. 17 at 35-36.  Defendant does not address Plaintiff's argument on this point.  *See* Doc. 21.

The Court concludes that the ALJ's errors were not harmless. Without an adequately developed record on which to rely, it cannot be presumed that the determination of Plaintiff's RFC and, thus, her ability to perform her past work would have been the same despite the errors identified herein.

## IV. CONCLUSION

For the foregoing reasons, the Commissioner's decision is **REVERSED**, and this case is **REMANDED** for further proceedings consistent with the findings herein.

**SIGNED** March 14, 2024.

_____
RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE